TIadcliff, J.
The plaintiff claims under a patent granted to Shepherd and Mercereau, in the year 1786, and derives his title, by sundry mesne conveyances, from those patentees. It appears that neither he, nor those under whom he claims, were ever in possession of the premises in question, but that the defendant has possessed them, under an opposite title, ever since they were inclosed or cultivated, and for a long time previous to the date of the patent. During all this period, therefore, the possession was held adverse to the plaintiff’s title, and although the government might be considered as competent to grant its right, when reduced to a chose in action, it was not competent for the grantees to convey it to another. The subsequent conveyances under which the plaintiff claims, were void, as founded on maintenance, and could not‘pass the title. This principle alone opposes a bar to the plaintiff’s recovery.
2. From the testimony of the cause, and an examination of the map, which was in evidence at the trial, and accompanies the case, it appears that all the premises in question, lay within two miles of the Hoosick river. They are, therefore, on the most rigorous construction, within the patent of Hoosick, which being the elder patent, must first be satisfied.
3. If we admit the location made by the proprietors of the Hoosick patent in 1754, to be conclusive, the premises are equally within it. This will also appear from an inspection of the map, and the modes of survey there adopted. On every ground, therefore, I think the plaintiff cannot recover.
The case presented to the court, is, however, obscure, and, in some respects, apparently inconsistent. It may, at least, be said, that there are not sufficient facts to enable us to decide with safety on the rule which ought now to prevail *40 in establishing the boundaries of the Hoosick patent. Independently of the location made by the patentees, and the possessions held under it, the original construction of its boundaries might be attended with some difficulty. The *plain and obvious mode to satisfy the terms of the grant, would be to give them the extent of two miles on each side of the Hoosick river, conformable to all its windings, if that be practicable. Several other modes have been suggested, and analogies between this and other cases attempted, which appear either arbitrary in themselves, or too loose and uncertain to furnish a rule for decision. Boundaries of a similar description have, I believe, in many instances, either been settled by accommodation, or established by a length of possession, and the acquiescence of all parties. But there is not sufficient evidence before us of the possessions on the exterior lines of this patent, under the location of 1754, to proceed on that ground, or of the notoriety of that location, to ascertain how far those lines had acquired a prior reputation, as to the boundaries of Hoosick, antecedent to the patent of 1786. If those lines and the possessions in conformity to them, had, previous to that period, been generally known and understood to form the boundaries of Hoosick, it might be a fair construction of the subsequent statute, to limit its northern extent by the reputed boundaries of Hoosick. They might then be considered as the boundaries de facto, which both government and the subsequent patentees had in view. But I think enough does not appear to determine generally the question on either of those patents, and I, therefore, in the present case, confine myself to the points first mentioned; and am of opinion, that the verdict ought to be set aside, and a new trial granted.
Kent, J.
1. It appears that the lessor of the plaintiff claims, by mesne conveyances, under the patent of 1786 ; and that at the time of those conveyances, the premises must have been held adversely by the defendant, so that nothing passed by the deeds. This objection, however, would only serve to turn the plaintiff round to a new suit, in the name of the persons from whom he derives his title, and would *41 not answer the expectations of the parlies, who nndoubtedly ^intended by the case, to bring the merits
of the controversy before the court. I shall then proceed to consider it further.
2. It is said that, under all the circumstances of the case, the party taking the patent of 1786, and by which he is bounded generally on the patent of Hoosick, ought to be concluded by the boundaries of the patent of Hoosick, as they existed in fact, and by reputation, at the date of the last patent. It ought to be observed, that the Hoosick patent is a very ancient one; that the description of its boundaries is susceptible of different constructions ; that the patentees in 1754, by a map of partition, located those boundaries ; and that the patent had a reputed boundary, which included the premises, at the time of the patent of 1786. The patentee of 1786 must be presumed to have knowledge of the location and map of 1754, and the reputation of the boundaries, as existing since; and for the sake of peace, and to quiet pos-session, it becomes a reasonable and useful construction, to restrict the boundary of the latter patent to the actual boundary of the former. By this construction, the words of the last patent can be satisfied; whereas the necessary consequence of the construction set up by the plaintiff is litigation, by disturbing possessions held under a location, long anterior to the patent. On this ground, I think the lessor of the plaintiff has failed.
3. But admitting that we ought now to ascertain from the patent of Hoosick itself, what is its true south boundary, the result in my opinion is the same. The natural and easy construction of the description of the boundaries appears to me, that of lines parallel with the creek, at two miles distance from it, on each side, and following the windings of the same, as far as they will permit, so as not, however, in any instance, to approach nearer than two miles of the main channel of the creek. The line must follow the course of the river, from the place of beginning to the place of ending, and in doing so, it is not sufficient to follow the general course of the creek. There is nothing sufficiently precise *43 in that. But to follow the actual *course of the creek, in all its inflexions, with the exception, nevertheless, of such (if any there be) as would require a nearer approach than two miles to the creek, is to do a thing capable of mathematical certainty.
We have something like an analogous case, in the northern boundary line of Massachusetts. By the charter, of that colony, the linfe extended from three miles north of the Merrimac river, to the south sea. This was determined to extend to three miles north of the mouth of the river, (2 Hutch. Hist. Mass. 383, 386, 388 ; 1 Doug. Summary, 421, 422, 423; 3 Belknap Hist. New Hamp. 9,) and to run parallel with the river, keeping three miles distant, and pursuing a course similar to the curvature of the river, until it came to such an inflexion, at Patuket falls, as would, if pursued, be inequitable and defeat other grants.
Upon this construction, the plaintiff fails, for it is stated in the case, that all the premises lie within two miles from some part of the creek. So that upon either of these three grounds, I am of opinion that the verdict must be set aside.
Benson, J. and Lewis, J. concurred.
Lansing, Oh. J. On the motion, on the part of the defendant, to set aside the verdict in this cause, it was stated,
1. That the premises were included in the Hoosick patent.
2. That the plaintiff had been so long out of possession, that he was not entitled to recover.
As connected with the first point, the position laid down by the judge, that the patentees having elected the mode exhibited in the map, for ascertaining their boundaries, were concluded by it, and all claiming against them were also concluded, demands a primary consideration, for if this can stand the test of examination, it is needless to inquire what were the real boundaries of the patent.
*That such a location of an ancient date, known and acknowledged by the proprietors of the adjoining patents, for a long series of years, or tacitly acquiesced in, by permitting the settlements and possessions to define its *44 lines, ought to be respected, and under certain circumstances, admitted to conclude the parties interested, I do not mean to question, but I cannot discover any ingredients requisite to produce this effect in the present case.
All that appears from the case respecting the map is, that it had beeii proved, “ that a map of partition of the patent of Hoosick, was made in the year 1754, and that lot No. 46 was one of the lots into which the patent was, in that partition, divided.”
It is then a naked fact, that a map of partition was made in the year 1754. It does not appear to have been publicly known ; nor does it appear, that the possessions of the proprietors who compiled that map, were co-extensive with the lots laid out. But it is proved, that persons claiming to hold under one Van Ness, had been in possession of lot No. 46, about 50 years. That as far back as 17 years ago, and ever since, the premises in question have been uninteruptediy reputed by that neighborhood, to be parcel of lot No. 46. And, it is added, that the defendant had been in possession of the premises, ever since they were inclosed or cultivated.
This map, if it ought to be considered as concluding the parties in interest, could not possibly affect the rights of strangers in the first instance. The making a map of a tract of land, is a process of daily occurrence. To include in it a greater extent of lands than fair construction will warrant, is not uncommon. But as ex parte acts, they are of little avail.
This map is so far from concluding, that it cannot be admitted in evidence, to the prejudice of strangers to the transaction. But a uniform and long continued acquiescence, as well on the part of the parties making it, as on those intrusted in repelling encroachments on the adjoining tracts, might have stamped it with a higher degree of veri-similitude. It would then have assimilated with a usage. Tt would have formed part of the evidence, if not of its existence, at least of its origin, and the substantive objects distinguishing the boundaries, by continuing to be re *45 spected as the termini, would have reflected a credit on the map, which it was destitute of before. If not so corroborated, the lapse of time, which has intervened from its construction, in my opinion, can add nothing to its effective qualities.
I therefore conclude, that the map derives no aid from extrinsic circumstances; and, intrinsically, nothing is to be collected from it, as affecting persons not parties to it.
If the map does not conclude, then we are compelled to resort to the patent of Hoosick, to determine the question between the parties.
In giving a construction to the patent, I differ from the opinion given by the surveyors, who have been examined on the trial respecting it. As a question which has produced a variety of sentiments among persons most conversant in subjects of this kind, I feel some degree of diffidence on the occasion, but as I have formed an opinion, I consider it my duty to express it. And I do this with the less repugnance, because as my opinion does not accord with that of my brethren on this point, they having pursued the subject in a different course, it may afterwards be deliberately considered and tested, if it should again become an object of controversy.
The patent is described as extending between two points, on the Hoosick creek, more than twenty miles from each other, the precise distance it is not material to ascertain ; it then proceeds, “ being in breadth, on each side of the said creek, two English miles, that is to say, two English miles on the one side of the said creek, and two English miles on on the other side of the said creek, the whole breadth being four English miles.”
After attentively considering this subject, it appears to me, that the location of this patent ought to be made by lines running parallel to the creek, at the distance of two miles from it; such lines to be so constructed, as to *conform to the sinuosities of the creek, and equidistant, on both sides from it.
That a conformation may exist, which would not admit *46 of this construction of bounds described as in this case, I can easily conceive, and readily admit. But I take it, the court are not required to give a rule applying to every possible conformation. As well might it be required to lay down a rule, equally applicable to the inscription of a circle, and the construction of a square. If the rule will properly apply to all cases similarly circumstanced with the present, it is all that is necessary.
To exemplify this construction, suppose three concentric equidistant circles, correspondent to one of the curves of the creek, such curve forming a segment of the middle circle to to be drawn. It is evident, that radii emanating from their common centre to the circumference of the exterior circle, will divide all the circles into portions of equal relative dimensions, as compared with the circumference of the circle of which they are respectively segments. But the relative dimensions of those segments, as compared with each other, will be greater in proportion, as the size of the circle, of which they form a portion, is increased. Hence the flexures on the exterior lines, require it to be extended on the projecting, and contracted on the retiring, curves of the creek; but notwithstanding this unavoidable extension or contraction, the lines may preserve their equidistant relation to the creek ; and the distance of two miles, may be located throughout, between it and its corresponding windings in the exterior lines.
On the first impression, it appeared to me necessary to inquire, what angle the line of the patent of Schaghtikoke formed with the creek, at the place of beginning supposing that whether that was obtuse or acute, might influence the extent of the patent from the creek; but I am satisfied it ought not. The creek is the term to which the extent exclusively relates. The patent is to extend two miles from the creek, and the obvious intent of the expression, uncontrolled by other circumstances, is that it shall extend two miles from the creek, measured at right angles *from the place of departure on it. And if it should be objected, that the line of the Schaghtikoke patent formed an obtuse angle on one side, and an acute angle on the other, from which the extent of *47 the Hoosick patent was to progress, and if that was not assumed as the base, a vacant angle would be left, which was evidently not the intent of the government, the objection, in my opinion, may be satisfactorily obviated, by commencing the exterior lines of the patent on the lines of the Schaghtikoke patent, at the distance of two miles from the creek, measured at right angles therefrom.
The construction adopted by the framers of the map, is not correspondent to the one I suppose to be proper ; it does not give lines parallel to the creek, or parallel to each other. In some places, it departs from the creek, considerably more than two miles, in a few instances it approaches it, so as to be within that distance, and the description in the map is at variance with that in the case.
It is in proof that the premises in question, are considerably within the distance of two miles from the creek, and the only part of the proof, that appears not to be perfectly consonant to this is, that the premises are within two miles of some part of it.
. Prom the inspection of the map, it seems that the formation of the creek, in that part which affects No. 46, is such, that though the premises are within two miles of some part of the creek, they may be excluded from the Hoosick patent, on the construction I take to be the true one; and as both parties have reposed themselves on its delineations as correct, and confined themselves merely to controvert or defend the principles on which the patent was located by it, and they have submitted the map as part of the case, it is competent to aid in the decision of this case. If this, therefore, were the only point in the cause, my opinion would be for the plaintiff.
The second point is, that the plaintiff had been so long out of possession, that he is not entitled to recover. If this objection is accurately expressed, it is not well taken; for from the date of the patent under which the plaintiff *elaims, which was in 1786, the lapse of time could not bar his recovery. But the objection, in the course of the argument resolved itself into another: that during the time the mesne *48 conveyances under which the plaintiff deduces his title were executed, the defendant held the premises adverse to him. This, in my opinion, presents an insuperable bar to the recovery by the plaintiff; for if the premises in question, as is stated iu the case, were inclosed and cultivated, a lo?ig time prior to granting the said letters patent, and the defendant was in possession since that time, the conveyances executed during such possession, which appears notoriously to have been adverse, could not pass any estate, and of consequence cannot afford a ground for recovery.
There is one other point, which would lead my mind to the same conclusion, and that is, that the patent of Hoosick had previous to the granting the letters patent, under which the plaintiff claims, acquired an extent, as respects the line in controversy, by reputation, and that the bounds of the latter patent are not defined by ascertained metes and bounds ; but its bounds generally refer to and abut on the Hoosick patent.
This, I take it, in legal intendment, must refer to the reputed boundaries only, as a contrary construction, by devolving the undefined and totally unascertained rights of the state on the patentees, must introduce infinite confusion and litigation.
I, therefore, concur in the opinion that the verdict must be set aside.
New trial granted.